**FILED**

IN THE UNITED STATES DISTRICT COURT

JAN 1 0 2019

FOR THE WESTERN DISTRICT OF TEXAS

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY CLERK

WACO DIVISION

| | | |
|---|---|---|
| MULTIMEDIA CONTENT MANAGEMENT LLC<br>*Plaintiff* | §<br>§<br>§<br>§ | |
| v. | § | CIVIL NO. 6:18-CV-00207-ADA |
| | § | |
| DISH NETWORK CORPORATION<br>*Defendant* | §<br>§<br>§<br>§<br>§ | |

## ORDER DENYING DEFENDANT DISH NETWORK CORPORATION'S MOTION TO DISMISS

Pending before the Court is Dish Network Corporation's ("Dish") Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6) on the basis that U.S. Patent Nos. 8,799,468 ("'468 Patent") and 9,465,925 ("'925 Patent) (together, the "Patents" or the "patents-in-suit") are invalid for claiming patent ineligible subject matter (Dkt. #13). After considering the relevant pleadings, and having heard arguments from all Parties, the Court denies Dish's Motion.

### Procedural Background

Multimedia Content Management, LLC ("MCM") filed its complaint against Dish, alleging infringement of the Patents. Dish filed this Motion to Dismiss on February 10, 2017 (Dkt. #13). MCM filed its Response on October 12, 2018 (Dkt. #16). Dish filed its Reply on October 23, 2018 (Dkt. #17). MCM filed its Sur-Reply on October 30, 2018 (Dkt. #20).

1

## Legal Standard FRCP 12(b)(6): Dismissal of Complaints Asserting Patents that are Invalid Under 35 U.S.C. § 101

Patent eligibility under § 101 is a question of law that can be determined at the pleading stage. *Genetic Techs. Ltd. v. Merial L.L.C.*, 818 F.3d 1369, 1373–74 (Fed. Cir. 2016) ("[I]n many cases it is possible and proper to determine patent eligibility under 35 U.S.C. § 101 on a Rule 12(b)(6) motion."); *Accenture Global Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1340–41 (Fed. Cir. 2013) ("Patent eligibility under § 101 presents an issue of law."). While patent eligibility is a question of law that may contain disputes over underlying facts, like other legal questions based on underlying facts, it is properly resolved on a Rule 12(b)(6) motion where the undisputed facts require a holding of ineligibility under the substantive standards of law. *SAP America, Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1166 (Fed. Cir. 2018).

## Analysis

"Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." 35 U.S.C. § 101. The Supreme Court has "long held that this provision contains an important implicit exception: Laws of nature, natural phenomena, and abstract ideas are not patentable." *Alice Corp. Pty. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2354 (2014) (quoting *Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 133 S. Ct. 2107, 2116 (2013)). Monopolization of these "basic tools of scientific and technological work" through the grant of a patent "might tend to impede innovation more than it would tend to promote it, thereby thwarting the primary object of the patent laws." *Id.* (first quoting *Myriad*, 133 S. Ct. at 2116; and then quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1298, 1923 (2012)).

### A. 35 U.S.C. § 101: Two-Step Analysis Under Supreme Court Alice Test

35 U.S.C. § 101 defines patentable subject matter as "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." The Supreme Court has explained that § 101 "contains an important implicit exception: Laws of nature, natural phenomena, and abstract ideas are not patentable." *Alice*, 134 S. Ct. at 2354. In assessing the question of patent eligibility under § 101, courts apply a two-step test propounded in *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66 (2012) and expanded in *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347 (2014). The test requires the Court to determine: (1) whether the claims are directed to an abstract idea, such as a fundamental practice or a process that could be performed mentally; and, if so, (2) whether the claims recite an inventive concept that transforms the abstract idea into a patent-eligible application. *Alice*, 134 S. Ct. at 2355. Generic computer implementation of an otherwise abstract process does not qualify as "significantly more," nor will elements that are well understood, routine, and conventional allow a claim to get over the § 101 hurdle.

The abstract idea exception to § 101 embodies "the longstanding rule that an idea of itself is not patentable." *Alice*, 134 S. Ct. at 2355. Examples of abstract ideas include "[f]undamental . . . practices long prevalent in our system of commerce," "methods of organizing human activity," and "methods [that] can be performed mentally, or which are the equivalent of human mental work." *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1285–86 (Fed. Cir. 2018) (citing *Alice*, 134 S. Ct. at 2356) (internal quotations omitted); *CyberSource v. Retail Decisions, Inc.*, 654 F.3d 1366, 1371 (Fed. Cir. 2011).

### B. The Patents

MCM notes that Dish seeks a determination that ninety claims of the patent would be invalid—Dish responds that its analysis of the claims is sufficient for the Court to enter an Order

of Dismissal with respect to all claims in both patents. MCM argues that the Patents disclose architecture that provides several benefits to computer networks. The Parties also dispute over whether the Patents are directed to "controlling access to content." MCM argues that its claims are not directed to the allegedly abstract idea of controlling access to content or any other abstract idea. To the contrary, MCM argues, the claims recite inventive concepts that are not well-understood, routine, or conventional, and that the claimed systems and networks are directed to a technical solution to a technical problem. MCM argues strenuously that multiple factual disputes exist. The Patents share a common specification and describe novel distributed communication network technology that, among other things, distributes content efficiently while protecting digital rights associated with the content. '925 Patent at 1:23–26.

The Court disagrees with MCM and finds that the asserted patents-in-suit are broadly directed to the abstract idea of regulating access to a service provider network. For the '468 Patent, Claim 1 is a representative claim because other asserted claims of the '468 Patent depend on Claim 1. Claim 1 states:

> 1. A system for regulating access to a service provider network (54, FIG. 1), the system comprising:
> a controller node (50, FIGS. 1 and 3) coupled to the service provider network (54, FIG. 1), the controller node (50) comprising: a first processor (202, FIG. 3) configured to generate controller instructions, and a first network interface (200, FIG. 3) configured to transmit the controller instructions over the service provider network (54) to a plurality of gateway units (58, FIGS. 1 and 2); and
> the plurality of gateway units (58[1]), each of the plurality of gateway units (58) comprising:
> a user interface (100, FIG. 2) configured to receive user-entered content requests for the service provider network (54);
> a second network interface (102, FIG. 2) coupled to the service provider network (54) and configured to receive the controller instructions from the controller node (50) through the service provider network (54); and a second processor (106, FIG. 2) coupled to the user interface (100) and the second network interface (102), wherein the second processor (106) is

>configured to selectively transmit the content requests to the service provider network (54) in accordance with the controller instructions, and transfer received content data responsive to the transmitted content requests from the service provider network (54) via the second network interface (102).

To establish that the '925 Patent is not an abstract idea, MCM submits that in FIG. 1 of the '925 Patent, the system describes a distributed network architecture that includes various computing devices, including subscriber terminals 60, communication gateways (CGs) 58 (i.e., the claimed "gateway units" or "network elements"), and Internet control points (ICPs) 50 (i.e., the claimed "controller node") in communication with one another. Subscriber sites each include one or more subscriber terminals and CGs. '925 Patent at 3:45–60. ICPs 50 are located remotely from the subscriber sites, and these ICPs generate and issue instructions to the CGs 58 via a service provider network, which is a network that is operated or controlled by a service provider to provide regulated access to content delivery services. *Id.* at 3:58-60; 5:33–42. The controller instructions from the ICPs control the operation of the CGs.

The '925 Patent identifies several control operations and associated controller instructions the ICPs may send to the CGs (e.g., "Active and Inactive CG Processing Control," "Conditional Denial," and "Packet Inspection," etc.). *Id.* at 7:58–8:43. The CG is under the exclusive control of the ICP. *Id.* at 4:7–19. The system regulates access by the subscriber to content available from the subscriber network in a secure manner. The system allows a service provider network to protect the digital rights associated with content and prevents a user from unauthorized alteration of the operation of the CG, which is under the control of the ICP.

In addition, MCM cites specifically to the specification of the '925 Patent: The patent states that "CGs are specifically designed to permit no subscriber-initiated programming and no access to the CG hardware or software." *Id.* at 4:8–10. "Instead, the CGs are provided only with

5

compiled code . . . [and u]pdates to this code are obtained from ICPs and encrypted passwords are stored in hidden, undocumented locations to allow authentication of ICP presence prior to CG control program update." *Id.* at 4:9–19.

In evaluating whether particular claims are directed to patent-ineligible abstract ideas, courts generally begin by "compar[ing] claims at issue to those claims already found to be directed to an abstract idea in previous cases." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1334 (Fed. Cir. 2016). Here, the Federal Circuit has acknowledged that the "[t]he concept of data collection, recognition, and storage" is well known and within the realm of abstract ideas. *Content Extraction and Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1347 (Fed. Cir. 2014). Similarly, lower courts have recognized the concept of record access and management as an abstract idea. *See Pres. Wellness Techs. LLC v. Allscripts Health Sols.*, No. 2:15-cv-1559-ECB, 2016 WL 2742379, at *7 (E.D. Tex. May 10, 2016) (listing district court cases); *see also Protegrity USA, Inc. v. Netskope, Inc.*, No.15-cv-2515, 2015 WL 6126599, at *6 (N.D. Cal. Oct. 19, 2015) (finding that claims directed to limiting access to information based on specified criteria are directed to an abstract idea).

MCM contends that the claimed system of Claim 1 of the '468 Patent is a system for regulating access to a service provider network (i.e. "a network that is operated or controlled by a service provider to provide regulated access to content delivery services for subscribers, but not including subscriber equipment or a subscriber network.") The system includes a controller node coupled to the service provider network and a plurality of gateway units. The controller node includes a first processor configured to generate controller instructions (i.e. "computer processor-executable instructions, excluding merely a uniform resource locator (URL) or an internet protocol (IP) address,") and a first network interface configured to transmit the controller

6

instructions over the service provider network to a plurality of gateway units. Each of the plurality of gateway units (i.e. "a computer device that is located within a subscriber premise, remote from the controller node, that is under control of the controller node, and that is usable by a subscriber to perform certain functionality only as permitted by the controller node") comprises a user interface configured to receive user entered content requests for the service provider network, a second network interface coupled to the service provider network and configured to receive the controller instructions from the controller node through the service provider network, and a second processor coupled to the user interface and the second network interface.

The Court finds that the fact that the system is comprised of all of these sophisticated components to comprise a user interface does not change the underlying abstract idea. *See Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1366 (Fed. Cir. 2015) ("An abstract idea does not become non-abstract by limiting the invention to a particular field of use or technological environment . . . ."); *see also Alice*, 134 S. Ct. at 2358 (limiting an abstract idea to a particular technological environment, such as a computer, does not confer patent eligibility); *Bilski v. Kappos*, 561 U.S. 593, 612 (2010) ("[L]imiting an abstract idea to one field of use . . . d[oes] not make the concept patentable.").

The Court is mindful of several recent cases dealing with Motions to Dismiss pursuant to Section 101. The Court agrees with MCM that the allegations in ¶ 57 are like those the Federal Circuit said raised issues of material fact in *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1130 (Fed. Cir. 2018). In *Aatrix*, the court noted that the patent owner's allegations describing "the development of the patented invention, including problems present in prior art computerized form file creation. It then presents specific allegations directed to 'improvements and problems solved by the Aatrix patented inventions.'" *Id.* The Court finds

enough similarity between the facts of *Aatrix* and the facts in this case to deny the Motion to Dismiss.

This issue was also addressed in *Berkheimer v. HP Inc.*, 881 F.3d 1360, *en banc rehearing denied*, 890 F.3d 1369. The court addressed the question of what qualifies as patent-eligible subject matter under 35 U.S.C. § 101 and how courts should resolve that question. The *Berkheimer* patent involved claims to "digitally processing and archiving files in a digital asset management system." *Berkheimer*, 881 F.3d at 1362. The district court conducted a *Markman* hearing and then granted defendants' motion for summary judgment of patent ineligibility under § 101, finding that the claims were "directed to the abstract idea of using a generic computer to collect, organize, compare, and present data for reconciliation prior to archiving." *Id.* at 1366.

The Federal Circuit agreed that the claims were directed to an abstract idea. *Id.* at 1366–67. The court then addressed the second step of the *Alice/Mayo* test (whether additional elements transform the claim into a patent-eligible application), and wrote "[t]he question of whether a claim element or combination of elements is well-understood, routine and conventional to a skilled artisan in the relevant field is a question of fact," which "must be proven by clear and convincing evidence." *Id.* at 1368. Thus, the Federal Circuit concluded, "[w]hether a claim recites patent eligible subject matter is a question of law which may contain disputes over underlying facts." *Id.* Under this reasoning, the Federal Circuit vacated the district court's grant of summary judgment under § 101 for several of the claims.

Finally, the Court believes that the Federal Circuit in *Data Engine Technologies LLC v. Google LLC*, 906 F.3d 999, 1002 (Fed. Cir. 2018) (finding that the claims solved a problem present in the prior art, which required use of an "arduous process of searching for, memorizing, and entering complex commands" to configure spreadsheets) may have expanded the precedent

8

of *Berkheimer* and *Aatrix Software*, emphasizing that questions of fact are often critical to part one of the eligibility analysis as well as part two. This first part of the *Alice* analysis asks whether a claim is "directed to" an abstract idea. While the Court believes at least some of the claims are so directed, it also finds that this question might hinge on whether the claim can be seen as a technological solution to a technological problem. The Court held in *Data Engine Technologies* that the claims solve the technical problem of how to configure electronic spreadsheets by disclosing a tabbed interface for navigating between spreadsheets. The court looked beyond the intrinsic evidence to the fact that subsequent to the priority date of the patent at issue, this type of tabbed interface became ubiquitous in spreadsheet programs. The court recognized this fact (and therefore this fact issue) could support a conclusion that the claims provide a technical improvement, finding that the "invention was applauded by the industry for improving computers' functionality as a tool able to instantly access all parts of complex three-dimensional electronic spreadsheets." *Data Engine Technologies*, 906 F.3d at 1008. The court also recognized additional evidence that "[n]umerous contemporaneous articles attributed the improved three-dimensional spreadsheets' success to its notebook tab feature." *Id.*

Having found that the patents-in-suit are directed to an abstract idea, the Court now examines the limitations of the claims to determine whether there is an "inventive concept" to "transform" the claimed abstract idea into patent-eligible subject matter. *Alice*, 134 S. Ct. at 2357. "[A]n invention is not rendered ineligible for patent simply because it involves an abstract concept." *Id.* at 2354. Rather, application of such concepts "to a new and useful end . . . remain eligible for patent protection." *Id.* (citation omitted).

MCM relies on the holding in *Bascom Global Internet Services, Inc. v. AT&T Mobility LLC*, 827 F.3d 1341 (Fed. Cir. 2016), in which the Federal Circuit vacated the District Court's

finding that Bascom failed to state a claim because its patents were invalid under § 101. In *Bascom*, the defendant argued "that the claims were directed to the abstract idea of 'filtering content,' 'filtering Internet content,' or 'determining who gets to see what.'" The Federal Circuit found that the inventive concept in the patent was "installation of a filtering tool ***at a specific location, remote from the end-users, with customizable filtering features specific to each end user***." *Bascom*, 827 F.3d at 1350 (emphasis added). The Federal Circuit held that the above claim recites a "specific, discrete implementation of the abstract idea of filtering content." *Id.* MCM argues, and the Court agrees for purposes of a Motion to Dismiss, that this decision is sufficiently analogous to the claims in *Bascom*. The Claimed System describes a network security tool "at a specific location, remote from the end users, with customizable" programmable instructions controlling the gateway units. *See id.* The Court finds that the fact that the Patents claim a centralized controller can generate different controller instructions for different gateway units, each of which will selectively transmit requests in accordance with their received controller instructions, to be sufficient under the second prong of the *Alice* analysis.

The Court finds that the patents-in-suit recite limitations that amount to more than an abstract idea. While elements of the patents-in-suit are known in the prior art, an inventive concept can be found in the non-conventional and non-generic combination of known conventional pieces. *Alice*, 134 S. Ct. at 2355. Accordingly, Dish has not shown that the patents-in-suit are ineligible for patent protection.

## CONCLUSION

It is therefore **ORDERED** that Defendant Dish's Motion to Dismiss for Invalidity of U.S. Patent Nos. 8,799,468 and U.S. Patent No. 9,465,925 for Un-Patentable Subject Matter Under Rule 12(b)(6) is **DENIED**.

SIGNED this 10th day of January 2019.

ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE