# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

| | | |
|---|---|---|
| MULTIMEDIA CONTENT | § | |
| MANAGEMENT LLC, | § | Civil Action No.: 6:18-cv-00207-ADA |
|     Plaintiff | § | |
| | § | JURY TRIAL DEMANDED |
| v. | § | |
| | § | PATENT CASE |
| DISH NETWORK L.L.C., | § | |
|     Defendant. | § | |
| | § | |

## PLAINTIFF'S RESPONSIVE CLAIM CONSTRUCTION BRIEF

In accordance with the Court's Initial Scheduling Order, Plaintiff Multimedia Content Management LLC ("Plaintiff" or "MCM") submits the following brief in response to Defendant Dish Network L.L.C.'s ("Defendant" or "Dish) opening claim construction brief, D.I. 48.

# Contents

I.   Introduction ............................................................................................................ 4

II.  Disputed Terms of the Independent Claims ......................................................... 4

   A.   Disputed Term No. 1 – "to generate controller instructions" ............................... 4

   B.   Disputed Term No. 2 – "a controller node" ......................................................... 7

   C.   Disputed Term No. 3 – "a service provider network" ......................................... 9

   D.   Disputed Term No. 4 – "selectively transmit[ting, by the plurality of gateway units,] the content requests to the service provider network in accordance with the controller instructions" .......................................................................................................... 11

   E.   Disputed Term No. 5 – "gateway units" ............................................................ 13

   F.   Disputed Term No. 6 – "network elements" ...................................................... 14

III.  Disputed Terms of the Independent Claims ...................................................... 14

   A.   Disputed Term No. 7 – "if the gateway unit enters the inactive state" ('468 Patent, Claim 29)   15

   B.   Disputed Term No. 8 – "registration information" ('468 Patent, Claim 33) ..................... 15

   C.   Disputed Term No. 9 – "uniquely" .................................................................... 16

   D.   Disputed Term No. 13 – "initial operating parameters" ('468 Patent, Claim 33) ............. 16

   E.   Disputed Term No. 8 – "subscriber management system" ('925 Patent, Claim 25) ......... 17

   F.   Disputed Term No. 9 – "authenticate subscribers or devices before allowing access into the service provider network" ('925 Patent, Claim 25) ............................................. 17

IV.  Dish's Expert Declaration .................................................................................. 18

   A.   Dish's Declaration ............................................................................................. 18

   B.   Dish's Declaration is Irrelevant to Claim Construction ..................................... 20

V.   Conclusion .......................................................................................................... 21

Exhibit List

| Exhibit No. | Description |
|---|---|
| 2001 | Declaration of Mr. Joel R. Williams |
| 2002 | File History of U.S. Patent Application No. 13/369,174 |
| 2003 | Decision Denying Institution of *Inter Partes* Review, IPR2017-01934, Paper No. 10 |
| 2004 | U.S. Patent No. 8,799,468 |
| 2005 | U.S. Patent No. 9,465,925 |

## I. INTRODUCTION

Plaintiff Multimedia Content Management LLC ("Plaintiff" or "MCM") submits the following brief in response to Dish's claim constructions brief submitted to the Court on March 15, 2019, D.I. 48. As detailed below, Dish's proposed constructions are not supported by, and are inconsistent with, the specifications and file histories of the patents-in-suit.

In accordance with the Court's Scheduling Order, D.I. 33 (Jan. 4, 2019), and the parties' Joint Stipulation Regarding Proposed Amended Scheduling Order, D.I. 42 (March 12, 2019), the parties have not scheduled any exchange of extrinsic evidence regarding claim construction and no discovery has taken place. MCM does not believe any extrinsic evidence is necessary for the Court to properly construe the disputed terms, and therefore MCM has not cited to any extrinsic evidence in support of its proposed constructions. MCM objects to Dish's Expert Declaration, submitted as Exhibit E to Dish's Claim Construction Brief, as wholly irrelevant to any issue of claim construction and MCM submits that such Declaration should be disregarded in its entirety.

## II. DISPUTED TERMS OF THE INDEPENDENT CLAIMS

### A. Disputed Term No. 1 – "to generate controller instructions"

| Plaintiff's Construction | Defendant's Construction |
|---|---|
| "generate computer processor-executable instructions, excluding merely a uniform resource locator (URL) or an internet protocol (IP) address" | "to create[ing] or bring[ing] into being computer executable instructions that determine whether to transmit or not transmit a content request from a user to the service provider network" |
| **Plaintiff's Amended Construction** | |
| "generate computer processor-executable instructions, excluding merely a uniform resource locator (URL) or an internet protocol (IP) address, excluding operations in which the controller instructions are only transmitted or are relayed by a device" | |

Dish's primary concern with MCM's proposed construction appears to be "when controller instructions are 'transmitted' or 'relayed,' the instructions do not fall within the scope of the claimed 'generating' term." Dish's Opening Claim Construction Brief ("Dish Brief"), Dkt. 48 at 3. MCM agrees with this statement. *See* Ex. A to Dish Brief (Patent Owner's Preliminary Response in IPR2017-01934) at 12–13; Dish Brief at 4–5. In an effort to simplify claim construction issues, MCM therefore proposes to amend its proposed construction to make explicit that generating controller instructions does not include merely transmitting or relaying instructions. Dish rejected MCM's offer to jointly approve this amended construction.

Dish proposes to interpret "generate" as "create" or "bring into being." Dish Brief at 3–5. Dish offers no explanation as to why these additional words are more helpful, less ambiguous, or more consistent with the specification of the '468 Patent than the word "generate." *Id.* Dish instead relies on a general-purpose dictionary. *Id.* While noting that this extrinsic evidence is unnecessary, MCM has addressed, with the amended construction, Dish's concern that "generate" may somehow include "a construction encompassing 'transmitted' or 'relayed' instructions." *Id.* at 5.

The parties agree that "controller instructions" are computer-processor executable. *Id.* at 3; MCM's Opening Claim Construction Brief ("MCM Brief") at 8. Beyond that, Dish attempts to limit "controller instructions" to those controller instructions that are only concerned with "instructions that determine whether to transmit or not transmit a content request from a user to the service provider network." Dish Brief at 3, 5–6. This construction improperly narrows "controller instructions" to a specific embodiment of the '468 Patent and is inconsistent with the specification of the '468 Patent.

First, Dish argues that determining whether to transmit or not transmit a content request "is more appropriately included in the construction of 'controller instructions' because that

determination aligns with the function and purpose of the 'controller instructions.'" Dish Brief at 6. Even if this were correct—and MCM addresses Dish's faulty premise below—this ignores the other functions that controller instructions are capable of carrying out. For example, as noted in MCM's Opening Claim Construction Brief, controller instructions may be used to instruct a gateway unit to redirect a content request or notify authorities regarding a content request. *See* MCM Brief at 17–18 (*citing* '468 Patent, 7:53–8:18, 10:31–39). To limit "controller instructions" to determining "whether to transmit or not transmit a content request' improperly ignores the other capabilities described in the '468 Patent.

Second, Dish's premise incorrectly assumes that ***one purpose*** of the controller instructions is the ***only purpose*** of the controller instructions. Claim 3 of the '468 Patent, which depends from Claim 1, recites: "wherein the controller instructions include instructions configured to deny access to a first group of network servers of the service provider network." '468 Patent, 18:61–63. Claim 4 of the '468 Patent, which depends from Claim 3, recites: "wherein the controller instructions comprise instructions configured to generate a notification to the controller node if a content request designates a network server of the service provider network." '468 Patent, 64–67. Construing "controller instructions" as being limited to determining "whether to transmit or not transmit a content request from a user to the service provider network" would eliminate the recited characteristics of the "controller instructions" as recited in other claims (e.g., Claims 3 and 4) of the '468 Patent.

Finally, Dish argues that MCM's proposed construction, which excludes URLs and IP addresses, is not supported by the intrinsic record. Dish Brief at 6. Dish provides no support whatsoever for this statement and points to nothing in the intrinsic record that is inconsistent with MCM's position. MCM's proposed construction, which excludes URLs and IP addresses, is

consistent with the specification of the '468 and '925 Patents as well as the understanding of one of ordinary skill in the art. *See* MCM Brief at 11, EX2001, ¶¶ 58–69.

MCM's proposed amended construction renders moot Dish's primary concern with MCM's initial proposed construction while remaining entirely consistent with MCM's initial construction and likewise supported by the specification and file history of the '468 Patent. Dish's remaining arguments are unsupported and inconsistent with the specification and claims of the '468 Patent.

**B. Disputed Term No. 2 – "a controller node"**

| Plaintiff's Construction | Defendant's Construction |
|---|---|
| "A network-based router or computer located within the network and remote from the gateway unit and that controls the operation of one or more gateway units" | "a single network device that controls the operation of the gateway units" |

Dish's proposed construction of a "controller node" impermissibly limits a controller node to "a single network device," and is inconsistent with the specification of the '468 Patent. Dish makes the sweeping statement that "a 'controller node' must be 'a ***single*** network device'—rather than multiple devices acting independently or as a collection to perform the activities of the controller node." Dish Brief at 7 (emphasis added). Dish's argument completely mischaracterizes the nature of a controller node and the '468 Patent's descriptions of a controller node.

Dish's argument is two-fold: (1) because a controller node must both generate and transmit controller instructions, the controller node must be a single device, Dish Brief at 7–8, and (2) because a controller node cannot receive controller instructions from "another device," the controller node must be a single device, *Id.* at 8–9. Both premises are flawed, as detailed below. Even if they were true, however, neither necessitates the conclusion that a controller node must be a single device.

The '468 Patent describes a controller node as including multiple components, some of which may generate controller instructions, and some of which may transmit the controller instructions. *E.g.*, '468 Patent, Claim 1. As Dish notes, "the same controller node that 'generates' the controller instructions must also 'transmit' those instructions." Dish Brief at 8. There is nothing in the '468 Patent—and Dish does not cite to anything—that supports the conclusion that this somehow means that "the ***same*** controller node" mandates "a ***single*** network device." *Id.* (emphasis added). Similarly, Dish's argument regarding "another device" requires an unsupported logical leap. Even if a controller node were incapable of receiving controller instructions from "another device," nothing requires a controller node to be "a single network device." The term "another device," as used in the context of the IPR, only distinguishes from something that is ***not the controller node***. *See* Dish Brief, Ex. A (POPR) at 13. There is nothing in MCM's statement that mandates the controller node as only a single device.

Further, the premise of Dish's argument is fundamentally flawed. Dish cites MCM's statements in the IPR that the IPR Petitioner's claim construction of "generate"—not "controller node"—is "overly broad and would incorrectly encompass the operation of the controller node receiving an existing controller instruction from another source." Dish Brief at 9 (*citing* Ex. A (POPR) at 13). This portion of the Patent Owner's Preliminary Response is only directed toward the argument MCM made in Section II.A *supra*—that generating controller instructions means more than simply receiving or transmitting controller instructions from another source. *See* Dish Brief, Ex. A (POPR) at 13. MCM's statement, when read in full, explains that the act of receiving and transmitting controller instructions from another source (e.g., another network device) is insufficient to satisfy the "generate" limitation of Claim 1. A controller node could still receive

and transmit controller instructions from another network device. The controller node must *also*, however, "generate" controller instructions in order to meet the limitations of Claim 1.

Finally, Dish's statement—without "the 'single' qualifier, any number of devices could be combined to 'generate' the controller instructions and 'transmit' the controller instructions"—is correct. *See* Dish Brief at 9. Dish's position that a controller node be limited to "a single network device" finds no support whatsoever in the '468 Patent. Dish points to a functional description of the controller node and makes the unsupported, illogical leap that this function mandates a specific, single device structure. Dish Brief at 10 (*citing* '468 Patent, 5:26–35).

Dish is forced to rely on unnecessary extrinsic evidence to support its construction. Dish Brief at 10 (*citing* Ex. D). Even the extrinsic evidence does not support Dish's conclusion. Dish's proffered definition merely states that a "controller" is "a device." *Id.* This is not a definition of a "controller node," but a "controller."

Dish's arguments attempting to limit a "controller node" to "a single network device" are unsupported by the specification of the '468 Patent and require unsupported, illogical leaps from MCM's statement made in the IPR. Dish's proffered construction should, therefore, be dismissed.

### C. Disputed Term No. 3 – "a service provider network"

| Plaintiff's Construction | Defendant's Construction |
|---|---|
| "a network that is operated or controlled by a service provider to provide regulated access to content delivery services for subscribers, but not including subscriber equipment or a subscriber network" | "a network between the controller node and the plurality of gateway units that is not the public Internet and only includes those network elements operated or controlled by the service provider" |
| **Plaintiff's Amended Construction** | |
| "a network that is operated or controlled by a service provider to provide regulated access to content delivery services for subscribers, but not including subscriber equipment or a subscriber network <u>or the entire public internet</u>" | |

Dish's primary concern with MCM's proposed construction appears to be that MCM's construction somehow includes "networks that include the public Internet." Dish Brief at 13–16. Yet, once again, Dish's argument is premised on taking an MCM statement, mischaracterizing it, and taking an unsupported, illogical leap. Specifically, Dish relies on MCM's statements that "the service provider network is not the ***entire*** public internet." *E.g.*, Dish Brief at 14 (*citing* Ex. A (POPR) at 6–7) (emphasis added). Dish takes this statement and somehow comes to the conclusion that a service provider network ***cannot include any part of the public internet***. *E.g.*, Dish Brief at 14. In order to explicitly address MCM's prior statement, MCM proposes to amend its proposed construction to exclude the "entire" public Internet.[1] Dish's argument that the service provider network cannot include any part of the public internet is unsupported by the specification and an improper attempt to narrow the scope of the term "service provider network."

According to the '468 Patent, a service provider network includes those network elements operated or controlled by the service provider. EX2001, ¶¶ 47–57. For example, the service provider network may include "SPA-controlled network elements 54." *Id.* ¶ 51. Figure 1 of the '468 Patent explicitly shows SPA-controlled network elements 54 as located within the Internet:



Figure 1

---

[1] Dish rejected MCM's offer to jointly approve this amended construction.

'468 Patent, FIG. 1 (annotation added).

Dish's attempt to extrapolate from "not the entire public internet" to "no piece of the public internet" is inconsistent with the specification of the '468 Patent. Therefore, it should be dismissed. Further, Dish relies on the declaration of Mr. Anthony J. Wechselberger in support of its Opening Claim Construction Brief. *See* Dish Brief at 13–14 (*citing* Ex. E). As detailed in Section IV *infra*, Mr. Wechselberger's Declaration is completely irrelevant to any issue of claim construction and should be given no weight. *See* Section IV *infra*.

**D. Disputed Term No. 4 – "selectively transmit[ting, by the plurality of gateway units,] the content requests to the service provider network in accordance with the controller instructions"**

| Plaintiff's Construction | Defendant's Construction |
|---|---|
| "a gateway unit, under control of the remotely located controller node, executes previously received controller instructions to determine whether to transmit a content request from a user or to take other action (e.g., deny the content request, redirect the content request, or notify authorities regarding the content request)" | "transmitting all content requests to take place within the service provider network in response to the controller instructions' decision to transmit the content requests" |

Dish argues that transmitting requests "to" the service provider network is somehow ambiguous. Dish Brief at 17–18. As MCM has repeatedly argued, a gateway unit includes a processor that is configured to selectively transmit a content request to the service provider network. As illustrated in the annotated figure below (the annotations are from the IPR and thus part of the intrinsic record of the '468 Patent), the subscriber's premises—at which the gateway unit is located—may be separated from the service provider network via a local area network ("LAN"):



*Unified Patents, Inc. v. Multimedia Content Management LLC*, IPR2017-01934, Patent Owner's Preliminary Response (PTAB Dec. 14, 2017), Paper 9, at 6 (annotating '468 Patent, FIG. 1). In such a configuration, the gateway unit would transmit a content request ***to*** the service provider network over the LAN.

Dish's argument that the '468 Patent requires content requests to be transmitted wholly ***within*** the service provider network is inconsistent with the specification of the '468 Patent and Dish's own proposed construction of "service provider network." The '468 Patent explicitly encompasses subscriber devices that are networked together on a LAN. *See, e.g.*, '468 Patent, FIG. 1, 3:55–58. Dish's construction would exclude these configurations.

Further, Dish's proposed construction of service provider network "only includes those network elements operated or controlled by the service provider." Dish Brief at 11. If a gateway unit had to communicate with the controller node *within* the service provider network, as Dish proposes, then the transmitter portion of the gateway unit would necessarily be "operated or controlled by the service provider." This would exclude any communication gateway that was not "operated or controlled" by the service provider. Specifically, this would exclude any situation in which the subscriber owned outright (rather than leased from the service provider) any set-top box

or router or other communication gateway. Thus, Dish's proposed construction is inconsistent with the specification of the '468 Patent.

Finally, Dish argues that "MCM's construction includes unnecessary and unsupported limitations [that] would only confuse a jury." Dish Brief at 18. Dish provides no basis for this assertion and does not offer evidence to refute any portion of these "unnecessary and unsupported limitations."

### E. Disputed Term No. 5 – "gateway units"

| Plaintiff's Construction | Defendant's Construction |
| --- | --- |
| "a computer device that is located within a subscriber premise, remote from the controller node, that is under control of the controller node, and that is usable by a subscriber to perform certain functionality only as permitted by the controller node" | "computer devices that are remote from the controller node and interface with the service provider network and a subscriber terminal" |
| **Plaintiff's Amended Construction** | |
| "a computer device that is ~~located within a subscriber premise,~~ remote from the controller node, that is under control of the controller node, and that is usable by a subscriber to perform certain functionality only as permitted by the controller node" | |

Dish states that the parties' "dispute centers on whether or not the 'gateway units' ***must*** be 'located within a subscriber premise' as proposed by MCM." Dish Brief at 19 (emphasis in original). While MCM disagrees that MCM's proffered construction was made "without any intrinsic support," *id.*, in an effort to simplify the issues, MCM proposes to remove the phrase "located within a subscriber premise" from MCM's proffered construction.[2] Dish does not dispute any other portion of MCM's proposed construction.

---

[2] Due to timing issues, MCM did not have a chance to share this proposed amendment with Dish. Should Dish desire additional time to supplement its Responsive Brief, MCM would not oppose any reasonable request to do so.

**F. Disputed Term No. 6 – "network elements"**

| Plaintiff's Construction | Defendant's Construction |
|---|---|
| "a computer device that is located within a subscriber premise, remote from the controller node, that is under control of the controller node, and that is usable by a subscriber to perform certain functionality only as permitted by the controller node" | "computer devices within the service provider network" |

Dish's construction of "network elements" is impermissibly broad. For example, Dish proposes that a service provider network is a network that "includes those network elements operated or controlled by the service provider." Dish Brief at 11. Therefore, under Dish's construction of "network elements," any "computer device" that belongs to the service provider would be a "network element." This would include any of the service provider's web servers, databases, or employee laptops. This is inconsistent with the '925 Patent.

Further, Dish argues that MCM's construction somehow renders Claim 24 of the '925 Patent indefinite. Dish Brief at 23. MCM disagrees. Even if the two terms Dish notes are interpreted to mean the same thing, *that does not mean they are the same device*. Two computers can both be computers without being the same computer.

## III.    DISPUTED TERMS OF THE DEPENDENT CLAIMS

Dish speculates, without any basis, that "MCM attempts to save dependent claims from being rendered abstract with specialized concepts and limitations not originally found within those claim limitations." Dish Brief at 24. MCM construed the dependent claim terms listed in the JCCS in accordance with the specifications of the '468 and '925 Patents, as detailed in MCM's Opening Claim Construction Brief. Despite Dish's allegations, MCM has never offered any "construction that adds language to a claim without intrinsic support." *Id.*

While Dish disagrees with MCM's constructions, Dish does not provide any support from the specifications of the '468 and '925 Patents to argue that MCM's proposed constructions are inconsistent with those specifications.

## A. Disputed Term No. 7 – "if the gateway unit enters the inactive state" ('468 Patent, Claim 29)

| Plaintiff's Construction | Defendant's Construction |
|---|---|
| "within a reasonable time before or after the gateway unit enters the inactive state" | Plain and ordinary meaning, no construction necessary with construction of overlapping terms as proposed above |

Dish argues that "jurors will understand the plain and ordinary meaning of this phrase," yet provides no explanation whatsoever for what that might be. Dish Brief at 24–26. MCM's proposed construction clarifies the plain and ordinary meaning of "if the gateway unit enters the inactive state." MCM believes that jurors will understand the phrase "within a reasonable time before or after the gateway unit enters the inactive state."

Dish defends its position with irrelevant evidence[3] and an unsupported argument that a notification happening a reasonable time after a gateway unit enters the inactive state "conflicts with the purposes of tamper-proofing the network as described in the specification." Dish Brief at 26. Everything Dish describes from the specification of the '468 Patent could happen within a reasonable time after the gateway unit enters an inactive state without compromising any of the security measures also described therein. Notably, Dish does not use its expert to support any of these statements.

## B. Disputed Term No. 8 – "registration information" ('468 Patent, Claim 33)

| Plaintiff's Construction | Defendant's Construction |
|---|---|
| "information that associates a gateway unit with a controller node" | Plain and ordinary meaning, no construction necessary |

---

[3] MCM admits that it intended, and intends, to stick with its original proposed construction for this term.

Dish's argument against MCM's construction is to cite a statement from the '468 Patent that the first entry in the registration process "is permanent and allows for initial registration and download of ICP addresses for the ***ISP associated with the specific CG***, network element, or SPA-controlled content server." Dish Brief at 27 (*citing* '468 Patent, 15:14–19) (emphasis in Dish Brief). Yet Dish also argues that an association somehow "contradicts the plain and ordinary understanding of registration." Dish Brief at 27. MCM fails to understand how the plain language of the '468 Patent specification contradicts the "plain and ordinary meaning" of the claim language. Dish's reliance on unnecessary extrinsic evidence, which again does not define the actual term at issue, does not support its position.

### C. Disputed Term No. 9 – "uniquely"

| Plaintiff's Construction | Defendant's Construction |
|---|---|
| "possessing, within a network, a characteristic of a device that is not shared by other devices within the network"" | Plain and ordinary meaning, no construction necessary |

Dish appears to only oppose the use of MCM's use of the word "characteristic" in MCM's proposed construction, instead arguing that "the '468 Patent uses 'uniquely' consistently as identifying information." Dish Brief at 28. MCM has no objection to substituting "identifying information" for "a characteristic." MCM's proposed construction simply clarifies the context in which a device may be deemed "unique." Dish does not dispute this portion of MCM's construction.

### D. Disputed Term No. 13 – "initial operating parameters" ('468 Patent, Claim 33)

| Plaintiff's Construction | Defendant's Construction |
|---|---|
| "one or more variables associated with an operating mode first entered into by a gateway unit after registration" | Plain and ordinary meaning, no construction necessary |

Dish argues that "first entered into" and "after registration" suggest "more temporal restrictions that are unnecessary and misleading to a jury." Dish Brief at 28. MCM respectfully submits that "initial" is a temporal restriction, and MCM's proposed construction clarifies that temporal restriction. *See* '468 Patent, 7:23–33.

### E. Disputed Term No. 8 – "subscriber management system" ('925 Patent, Claim 25)

| Plaintiff's Construction | Defendant's Construction |
|---|---|
| "a system that manages subscriber devices of a service provider network, the subscriber management system being part of the service provider network" | Plain and ordinary meaning, no construction necessary |

Dish argues that MCM's "proposed construction simply reorders the claim language itself." Dish Brief at 29. MCM respectfully submits that MCM's construction clarifies that a "subscriber management system" is a system that "manages subscriber devices" rather than any "management system" that happens to be controlled by a subscriber. MCM's construction is supported by the specification of the '925 Patent. *See* '925 Patent, 7:33–41, 10:15–21.

### F. Disputed Term No. 9 – "authenticate subscribers or devices before allowing access into the service provider network" ('925 Patent, Claim 25)

| Plaintiff's Construction | Defendant's Construction |
|---|---|
| "identifying subscribers or devices that are allowed to access a requested service provided by the service provider network" | Plain and ordinary meaning, no construction necessary with construction of overlapping terms as proposed above |

Dish argues that "MCM's proposed construction does not simplify the claim language." Dish Brief at 29. MCM respectfully submits that "simplifying the claim language" is not the test for claim construction. MCM's construction clarifies that "authentication," which Dish notes appears throughout the specification of the '925 Patent, is used in the context of authentication of subscribers or devices that are allowed to access a requested service provided by the service provider network. *See* '925 Patent, 12:24–26, 10:15–21, 4:7–19, 7:33–41, 15:9–30.

## IV.   DISH'S EXPERT DECLARATION

In accordance with the Court's Scheduling Order, Dkt. 33, the parties exchanged Opening Claim Construction Briefs by March 21, 2019.[4] Defendant Dish Network Corp. ("Dish" or "Defendant") submitted, as part of Dish's Opening Claim Construction Brief ("Claim Construction Brief"), Exhibit E—a Declaration from Anthony J. Wechselberger (the "Declaration"). Mr. Wechselberger's Declaration is irrelevant to the issues surrounding claim construction and the Court should give no weight to the Declaration.

### A.   Dish's Declaration

In Dish's Opening Claim Construction Brief, Dish cites to the Declaration twice, both times in support of Dish's proposed construction for Term #3—"a service provider network." Dish Brief at 11–14. Specifically, Dish cites to the Declaration only as support for the general statement that "a service provider may not use the Internet at all." *Id.* at 14. As detailed in Section III *infra*, this statement is not in dispute. The only specific paragraph to which Dish cites is ¶ 39. *Id.* Paragraph 39 of the Declaration barely touches on the issues of claim construction. Dish's citations, however, obfuscate the fact that the Declaration is primarily a vehicle for Dish to attempt to introduce unsupported, untimely arguments about the validity of the patents-in-suit.

Dish's Declaration includes twenty substantive paragraphs, ¶¶ 21–39.[5] Dish's expert does not provide his opinion on the appropriate construction of any disputed term in any of those paragraphs. *See generally* Dish Brief, Ex. E. Only ¶ 39 even mentions claim construction. Paragraph 39 states:

---

[4] Plaintiff submitted a revised Opening Claim Construction Brief on March 22, 2019, Dkt. 50, to comply with the Court's requested page limits. *See* Order Granting Plaintiff's Unopposed Motion for Leave to File Substitute Opening Claim Construction Brief, Dkt. 52.

[5] ¶¶ 1–16 are Mr. Wechselberger's background, ¶¶ 17–18 are a recitation of materials considered, ¶¶ 19–20 are Mr. Wechselberger's statements regarding the level of ordinary skill in the art, and ¶ 40 is Mr. Wechselberger's recognition that the Declaration was made under penalty of perjury. Ex. E.

"I understand the claim phrase 'selectively transmit . . . the content requests to the service provider network in accordance with the controller instructions' and the party's proffered constructions [sic] is of particular focus." Ex. E at ¶ 39. Mr. Wechselberger then makes a statement about how "the required communication between the claimed controller nodes and claimed gateway units, including transmission of the controller instructions and subsequent content requests can, [sic] be made to and within the cable distribution plant, and do not require, for example, any Internet connectivity." *Id.* Mr. Wechselberger makes no mention of which "party's proffered constructions" he is referring to or how his statements about "required communication" relates to any construction. *Id.*

The Declaration ***does*** include many pages of Mr. Wechselberger opining on various systems that Mr. Wechselberger believes are relevant to the patents-in-suit. Mr. Wechselberger states his "declaration is not directed to a validity analysis," but in the same paragraph argues "there is nothing within the asserted claims that was not already found in standard cable systems and STBs that supported VOD functionality leading up to November of 2003." Ex. E at ¶ 37. Mr. Wechselberger goes on to opine that "each and every claimed action required of the service provider network can be supported by a standard two-way capable cable distribution plant working in conjunction with the cable head-end and the normal plurality of STBs." *Id.* at ¶ 38. There is nothing in these statements related to claim construction. Dish submits ¶¶ 37–38, and the paragraphs that proceed it, in an attempt to distract the Court with issues that Plaintiff cannot properly rebut at this time as they are irrelevant to claim construction.[6]

---

[6] Dish is not scheduled to provide preliminary invalidity contentions until July 26, 2019. Dkt. 33.

## B. Dish's Declaration is Irrelevant to Claim Construction

As detailed above, the contents of the Declaration are irrelevant to the issues of claim construction, the only issues to which briefing has been authorized by the Court to date. The Simultaneous Opening Claim Construction Briefs are intended to address the appropriate constructions of claim terms on which the parties disagree. Characterizations of the state of the art—when they are not tied in any way to the claim language or to any proposed construction— are irrelevant to the appropriate construction of any claim term. Yet Dish submitted a 23-page expert declaration, no part of which relates to Dish's proposed constructions. *See generally* Dish Brief, Ex. E.

The only content of the Declaration that is possibly related to claim construction in any way is ¶ 39, in which Dish's expert opines only that he "understand[s] the claim phrase . . . and the party's proffered constructions is [sic] of particular focus." Ex. E. Dish's Claim Construction Brief provides no basis for tying this (or any other) portion of the Declaration to the issues of claim construction. In Dish's Claim Construction Brief, Dish does not tie the statement that "a service provider may not use the Internet at all" to its proffered construction—a "network . . . that is not the public Internet and only includes those network elements operated or controlled by the service provider." *Id.* at 11. Dish provides no basis for its leap from "a service provider *may* not use the Internet" to "a service provider network" *categorically excludes* the Internet.

In the same section of the Claim Construction Brief, Dish cites generally to the entire substantive portion of the Declaration for the proposition that it was "well understood" in the art that "a 'cable service provider' may include a 'side' of the network that only transmits data over traditional coaxial cable lines." *Id.* at 14. Again, this statement is not in dispute. A "cable service provider" *may* include a number of implementations of a network, including "a network that is operated or controlled by a service provider to provide regulated access to content delivery services

for subscribers, but not including subscriber equipment or a subscriber network"—Plaintiff's proffered construction. *Id.* at 11. Thus, the Declaration provides no evidence that is tied to or supports Dish's proffered constructions and is thus irrelevant to any issue in the claim construction briefing.

Dish's Declaration contains, at best, a single paragraph vaguely related to Dish's claim construction position—paragraph 39. The remainder of Dish's Declaration is irrelevant to issues of claim construction. Given the limited probative value of ¶ 39, and the prejudicial value of the remaining eleven substantive pages (¶¶ 21–38), the Court should ignore the entirety of Dish's Declaration.

## V. CONCLUSION

Dish's proposed constructions are not supported by, and are inconsistent with, the specifications and file histories of the patents-in-suit. Additionally, Dish attacks MCM's constructions with flawed, unsupported arguments. Finally, Dish attempts to provide the Court with an untimely, improper invalidity analysis in the guise of an expert report that purports to be about claim construction. The Court should give no weight to Dish's evidence and reject Dish's proposed constructions.

Dated: April 5, 2019

Respectfully submitted,

/s/ Jeffrey G. Toler

Jeffrey G. Toler
Aakash S. Parekh
Benjamin R. Johnson (*pro hac vice*)
TOLER LAW GROUP, PC
8500 Bluffstone Cove
Suite A201
Austin, TX 78759
(512) 327-5515
jtoler@tlgiplaw.com
aparekh@tlgiplaw.com
bjohnson@tlgiplaw.com

**Attorneys for Plaintiff Multimedia Content Management LLC**

## CERTIFICATE OF SERVICE

I hereby certify that on April 5, 2019, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record in the above-reference matter.

/s/ Angie K. Blazek
Angie K. Blazek
TOLER LAW GROUP, PC
8500 Bluffstone Cove
Suite A201
Austin, TX 78759
(512) 327-5515