# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# WACO DIVISION

| | | |
|---|---|---|
| MULTIMEDIA CONTENT MANAGEMENT LLC, | § § § | Civil Action No.: 6:18-cv-00207-ADA |
| Plaintiff | § § | JURY TRIAL DEMANDED |
| v. | § § | PATENT CASE |
| DISH NETWORK L.L.C., Defendant. | § § § § | |

## PLAINTIFF'S REPLY CLAIM CONSTRUCTION BRIEF

In accordance with the Court's Initial Scheduling Order, Plaintiff Multimedia Content Management LLC ("Plaintiff" or "MCM") submits the following brief in reply to Defendant Dish Network L.L.C.'s ("Defendant" or "Dish) responsive claim construction brief, D.I. 52.

Contents

I. Introduction ................................................................................................................. 1
II. Disputed Terms of the Independent Claims ............................................................. 1
   A. Disputed Term No. 1 – "to generate controller instructions" ............................... 1
   B. Disputed Term No. 2 – "a controller node" .......................................................... 3
   C. Disputed Term No. 3 – "a service provider network" ......................................... 4
   D. Disputed Term No. 4 – "selectively transmit[ting, by the plurality of gateway units,] the content requests to the service provider network in accordance with the controller instructions" ................................................................................................................. 6
   E. Disputed Term No. 5 – "gateway units" ............................................................... 7
   F. Disputed Term No. 6 – "network elements" ......................................................... 8
III. Disputed Terms of the Dependent Claims ............................................................... 8
   A. Disputed Term No. 7 – "if the gateway unit enters the inactive state" ('468 Patent, Claim 29) ............................................................................................................................. 9
   B. Disputed Term No. 8 – "registration information" ('468 Patent, Claim 33) ........ 9
   C. Disputed Term No. 9 – "uniquely" ..................................................................... 10
   D. Disputed Term No. 10 – "initial operating parameters" ('468 Patent, Claim 33) ............. 10
IV. Conclusion ................................................................................................................ 11

Exhibit List

| Exhibit No. | Description |
|---|---|
| 2001 | Declaration of Mr. Joel R. Williams |
| 2002 | File History of U.S. Patent Application No. 13/369,174 |
| 2003 | Decision Denying Institution of *Inter Partes* Review, IPR2017-01934, Paper No. 10 |
| 2004 | U.S. Patent No. 8,799,468 |
| 2005 | U.S. Patent No. 9,465,925 |
| 2006 | Patent Owner's Preliminary Response in *Inter Partes* Review, IPR2017-01934, Paper No. 9 |

## I. INTRODUCTION

Plaintiff Multimedia Content Management LLC ("Plaintiff" or "MCM") submits the following brief in reply to Dish's responsive claim constructions brief submitted to the Court on April 5, 2019, D.I. 52. As detailed below, Dish continues to seek constructions that are not supported by, and are inconsistent with, the specifications and file histories of the Patents-in-Suit.

In accordance with the Court's Scheduling Order, D.I. 33 (Jan. 4, 2019), and the parties' Joint Stipulation Regarding Proposed Amended Scheduling Order, D.I. 42 (March 12, 2019), the parties have not scheduled any exchange of extrinsic evidence regarding claim construction. MCM does not believe any extrinsic evidence is necessary for the Court to properly construe the disputed terms, and therefore MCM has not cited to any extrinsic evidence in support of its proposed constructions.

## II. DISPUTED TERMS OF THE INDEPENDENT CLAIMS

### A. Disputed Term No. 1 – "to generate controller instructions"

| Plaintiff's Construction | Defendant's Construction |
|---|---|
| "generate computer processor-executable instructions, excluding merely a uniform resource locator (URL) or an internet protocol (IP) address" | "to create[ing] or bring[ing] into being computer executable instructions that determine whether to transmit or not transmit a content request from a user to the service provider network" |
| **Plaintiff's Amended Construction** | |
| "generate computer processor-executable instructions, excluding merely a uniform resource locator (URL) or an internet protocol (IP) address, excluding operations in which the controller instructions are only transmitted or are relayed by a device" | |

As a threshold matter, MCM notes that its proposed construction is identical to the construction offered in the file history of the '468 Patent. Specifically, MCM's proposed construction is identical to the construction MCM offered in Patent Owner's Preliminary Response,

1

IPR2017-01934, Paper 9, at 4–8 (attached hereto as EX2006) ("POPR"). Dish has not provided any reason why the Court should deviate from the intrinsic evidence of the '468 Patent—which includes the POPR—in construing the terms of the '468 Patent.

In an effort to reduce the number of issues, MCM offered to narrow its construction, explicitly excluding operations in which the controller instructions are only transmitted or are relayed by a device. Despite this, Dish continues to argue that "whether instructions must be created and not simply transmitted or relayed" is in dispute. Dish Responsive Brief at 1. MCM disagrees that this is in dispute.

Further, in an effort to further reduce the number of issues, MCM is willing to accept the construction: "<u>create or bring into being</u> computer processor-executable instructions, excluding merely a uniform resource locator (URL) or an internet protocol (IP) address."

Despite the fact that MCM's proposed construction matches the claim construction that is explicitly part of the intrinsic evidence, *see* POPR, EX2006 at 8, Dish also argues that the intrinsic evidence supports "the understanding that 'controller instructions' must decide whether or not to transmit content requests." *Id.* While MCM agrees that this is one function controller instructions can support, Dish's construction unnecessarily limits controller instructions to just that one function. Dish's argument is premised on combining the "generate controller instructions" and "selectively transmit" limitations into a single limitation. Reply at 3–5. As MCM noted, controller instructions can instruct a gateway unit to do more than just "determine whether to transmit or not transmit a content request," as Dish's construction would require. *E.g.*, '468 Patent, 18:61–63, 18:64–67 (Claim 4) ("wherein the controller instructions comprise instructions configured to generate a notification to the controller node if a content request designates a network server of the service provider network.").

Dish's argument that a construction of controller instructions that properly covers multiple features and functions disclosed by the '468 Patent would somehow "read terms out of the claim" is baseless. In Claim 1 of the '468 Patent, the second processor of the gateway unit is "configured to selectively transmit the content requests to the service provider network in accordance with the controller instructions." '468 Patent, 18:47–54. That is just one claim, however. In other claims (e.g., Claims 3 and 4 of the '468 Patent), the controller instructions perform more than determining whether to transmit or not transmit a content request. *E.g.*, '468 Patent, 18: 64–67 (Claim 4) ("wherein the controller instructions comprise instructions configured to generate a notification to the controller node if a content request designates a network server of the service provider network.").

**B. Disputed Term No. 2 – "a controller node"**

| Plaintiff's Construction | Defendant's Construction |
|---|---|
| "A network-based router or computer located within the network and remote from the gateway unit and that controls the operation of one or more gateway units" | "a single network device that controls the operation of the gateway units" |

There are two points of dispute between MCM and Dish regarding this term: (1) whether "a controller node" requires a *single* device, and (2) whether MCM's construction "imports limitations from the specification." The first argument is flawed logically and the second argument ignores the specification of the '468 Patent.

First, Dish's Responsive Claim Construction Brief adds nothing to support its flawed arguments that: (1) because a controller node must both generate and transmit controller instructions, the controller node must be a single device, Dish Brief at 7–8, and (2) because a controller node cannot receive controller instructions from "another device," the controller node must be a single device. *Id.* at 8–9. As MCM explained in its Responsive Brief, both arguments

3

are flawed and neither necessitates Dish's conclusion. *See* MCM Responsive Brief at 7–9 ("Even if a controller node were incapable of receiving controller instructions from 'another device,' nothing requires a controller node to be 'a single network device.'").

Next, Dish argues that MCM's use of "network-based router or computer located within the network and remote from the gateway unit" somehow "introduce ambiguity and conflict with MCM's own descriptions of the figures and specification." Dish Responsive Brief at 8–9. First, it is unclear how (as Dish argues) MCM's proposed construction is "lexicography or disclaimer." *Id.* at 8. Dish admits, through reliance on unnecessary extrinsic evidence, that the term "node" may require construction. Thus, Dish's argument that MCM's construction of node requires lexicography rings hollow.

However, in the interest of reducing the number of issues, if Dish and/or the Court believes "network device" is more clear to a jury than "network-based router or computer," MCM is willing to adopt the construction: "a network device located within the network and remote from the gateway unit and that controls the operation of one or more gateway units."

### C. Disputed Term No. 3 – "a service provider network"

| Plaintiff's Construction | Defendant's Construction |
|---|---|
| "a network that is operated or controlled by a service provider to provide regulated access to content delivery services for subscribers, but not including subscriber equipment or a subscriber network" | "a network between the controller node and the plurality of gateway units that is not the public Internet and only includes those network elements operated or controlled by the service provider" |
| **Plaintiff's Amended Construction** | |
| "a network that is operated or controlled by a service provider to provide regulated access to content delivery services for subscribers, but not including subscriber equipment or a subscriber network <u>or the entire public internet</u>" | |

As a threshold matter, MCM notes that its proposed construction is substantively identical to the construction offered in the file history of the '468 Patent. Specifically, MCM's proposed construction is substantively identical to the construction MCM offered in the POPR. EX2006 at 4. Dish has not provided any reason why the Court should deviate from the intrinsic evidence of the '468 Patent—which includes the POPR—in construing the terms of the '468 Patent.

Dish argues that MCM's construction "backpedals away" from disclaimers made during IPR2017-01934, *Unified Patents Inc. v. Multimedia Content Management LLC* ("Unified Patents IPR"). Dish Responsive Brief at 10. MCM respectfully notes that MCM's construction of "service provider network" is substantively identical to the construction MCM adopted in the Unified Patents IPR.[1] EX2006 at 4–8. It is also substantively identical to the construction proposed by MCM's expert in the IPR.[2] EX2001 at ¶ 47. In an effort to reduce the number of issues, MCM proposed to narrow its construction to explicitly exclude the entire public internet. Dish Responsive Brief at 11–12.

Dish's proposed construction misstates MCM's positions in the Unified Patents IPR and ignores technical operation of networks and the Internet. First, Dish argues that MCM somehow disclaimed any use whatsoever of the public Internet. *Id.* at 11–12. As noted above, this is inaccurate. MCM narrowed the construction of service provider network to exclude the ***entire*** public Internet. Second, Dish argues that its definition, which "only includes those network

---

[1] In the Unified Patent IPR, MCM proposed a construction of "a network that is operated or controlled by a service provider to provide regulated access to content delivery services for subscribers. The service provider network does not include subscriber equipment or a subscriber network." EX2006 at 4.

[2] Mr. Williams proposed that "service provider network" should be construed as: "A network that is operated or controlled by a service provider to provide regulated access to content delivery services for subscribers. The service provider network does not include subscriber equipment or a subscriber's local area network." EX2001 at ¶ 47.

elements operated or controller by the service provider network," is supported by the specification of the '468 Patent. *Id.* at 13–14. Further, while the service provider network may be "operated or controlled by a service provider," data packets within the service provider network may travel over cables, fiber, switches, routers, or other network elements that do not belong to the service provider. Dish's construction that limits a service provider network to a network that "only includes those network elements operated or controlled by the service provider" improperly restricts the '468 Patent to unsupported, unrealistic scenarios.

> D. **Disputed Term No. 4 – "selectively transmit[ting, by the plurality of gateway units,] the content requests to the service provider network in accordance with the controller instructions"**

| Plaintiff's Construction | Defendant's Construction |
|---|---|
| "a gateway unit, under control of the remotely located controller node, executes previously received controller instructions to determine whether to transmit a content request from a user or to take other action (e.g., deny the content request, redirect the content request, or notify authorities regarding the content request)" | "transmitting all content requests to take place within the service provider network in response to the controller instructions' decision to transmit the content requests" |

Dish characterizes the "key dispute" for this term as "whether the content requests from the gateway units or network elements must travel over the service provider network or not." Dish Responsive Brief at 14–17. Dish again makes a sweeping position that is a flawed leap from the support it cites. MCM acknowledges that communications between a gateway unit and a controller node may take place within the service provider network. Dish, however, cannot accept that those communications may not take place within the service provider network. As MCM noted in its Responsive Brief, 12–13, restricting "selectively transmitting" to take place wholly within the service provider network would, for example, exclude any configuration in which the subscriber owned a gateway unit outright.

6

Further, while the service provider network may be "operated or controlled by a service provider," data packets within the service provider network may travel over cables, fiber, switches, routers, or other network elements that do not belong to the service provider.

Finally, Dish's construction introduces unnecessary ambiguity. Controller instructions do not "decide" to transmit content requests. Controller instructions are computer-executable instructions. A computer device with a processor must execute those instructions. Only in this sense does a device "decide" anything.

### E. Disputed Term No. 5 – "gateway units"

| Plaintiff's Construction | Defendant's Construction |
|---|---|
| "a computer device that is located within a subscriber premise, remote from the controller node, that is under control of the controller node, and that is usable by a subscriber to perform certain functionality only as permitted by the controller node" | "computer devices that are remote from the controller node and interface with the service provider network and a subscriber terminal" |
| **Plaintiff's Amended Construction** | |
| "a computer device that is ~~located within a subscriber premise,~~ remote from the controller node, that is under control of the controller node, and that is usable by a subscriber to perform certain functionality only as permitted by the controller node" | |

Dish states that the parties' "dispute centers on whether or not the 'gateway units' ***must*** be 'located within a subscriber premise' as proposed by MCM." Dish Brief at 19 (emphasis in original). While MCM disagrees that MCM's proffered construction was made "without any intrinsic support," *id.*, in an effort to simplify the issues, MCM proposes to remove the phrase

"located within a subscriber premise" from MCM's proffered construction.[3] Dish does not dispute any other portion of MCM's proposed construction.

### F. Disputed Term No. 6 – "network elements"

| Plaintiff's Construction | Defendant's Construction |
|---|---|
| "a computer device that is located <u>within the service provider network and</u> remote from the controller node, that is under control of the controller node, and that is usable by a subscriber to perform certain functionality only as permitted by the controller node" | "computer devices within the service provider network" |

Dish's construction of "network elements" is impermissibly broad. For example, Dish proposes that a service provider network is a network that "includes those network elements operated or controlled by the service provider." Dish Brief at 11. Therefore, under Dish's construction of "network elements," any "computer device" that belongs to the service provider would be a "network element." This would include any of the service provider's web servers, databases, or employee laptops. This is inconsistent with the '925 Patent.

In an effort to reduce the number of issues, MCM is willing to incorporate Dish's "within the service provider network" limitation into MCM's proposed construction, as noted above.

## III. DISPUTED TERMS OF THE DEPENDENT CLAIMS

Dish speculates, without any basis, that MCM proposes constructions of the dependent claim terms "hoping that those limitations will save the claims from future validity challenges." Dish Responsive Brief at 23. Again, MCM denies Dish's claim of "litigation gamesmanship," noting MCM simply intends to clarify the language of the dependent claims.

---

[3] Due to timing issues, MCM did not have a chance to share this proposed amendment with Dish. Should Dish desire additional time to supplement its Responsive Brief, MCM would not oppose any reasonable request to do so.

MCM construed the dependent claim terms listed in the JCCS in accordance with the specifications of the '468 and '925 Patents, as detailed in MCM's Opening Claim Construction Brief. Despite Dish's allegations, MCM has never offered any "construction that adds language to a claim without intrinsic support." *Id.* In light of this, and to reduce the number of terms in dispute, MCM agrees to Dish's proposal that "subscriber management system" ('925 Dependent Claim 25) and "authenticate subscribers or devices before allowing access into the service provider network" ('925 Dependent Claim 25) should be given their plain and ordinary meaning.

### A. Disputed Term No. 7 – "if the gateway unit enters the inactive state" ('468 Patent, Claim 29)

| Plaintiff's Construction | Defendant's Construction |
|---|---|
| "within a reasonable time before or after the gateway unit enters the inactive state" | Plain and ordinary meaning, no construction necessary with construction of overlapping terms as proposed above |

Dish argues that MCM's attempt to clarify the if-then nature of Claim 29 is an improper "temporal limitation." Dish Responsive Brief at 24. MCM disagrees. The plain and ordinary meaning of "if" suggests a necessary temporal relationship: if X, then later Y. As MCM has repeatedly argued, the '468 Patent specification does not impose such a hard and fast temporal relationship. *See* '468 Patent 7:48–52; 10:7–30. MCM therefore submits that clarifying the temporal nature of Claim 29 would aid in a jury's understanding of the term and is consistent with the specification of the '468 Patent.

### B. Disputed Term No. 8 – "registration information" ('468 Patent, Claim 33)

| Plaintiff's Construction | Defendant's Construction |
|---|---|
| "information that associates a gateway unit with a controller node" | Plain and ordinary meaning, no construction necessary |

Dish argues that MCM's construction "seeks to transform the claimed 'registration information' in to something very different from what the claims and intrinsic record support."

9

Dish Responsive Brief at 25. Dish provides no mention of what this "something very different" might be. While MCM agrees that "both 'registration' and 'information' can be easily understood by a jury," *id.* at 24, MCM believes it would be helpful to a jury to clarify *what* is being registered, and with what else. In the context of Claim 33, MCM believes it would be helpful to a jury to clarify that a gateway unit is being registered with a controller node. If Dish and/or the Court believe that the language "information that registers a gateway unit with a controller note" is more appropriate, MCM has no objection.

### C. Disputed Term No. 9 – "uniquely"

| Plaintiff's Construction | Defendant's Construction |
|---|---|
| "possessing, within a network, a characteristic of a device that is not shared by other devices within the network"" | Plain and ordinary meaning, no construction necessary |

Dish argues that MCM's cited portion of the '468 Patent specification "does not mention a 'network' at all, much less that the 'unique identifying information' must be identifying information 'not shared by other devices within the network' as MCM alleges." Dish Responsive Brief at 25. MCM respectfully submits that this is precisely what an "IP address" is—information that uniquely identifies a device within a network that is not shared by other devices within the network.

### D. Disputed Term No. 10 – "initial operating parameters" ('468 Patent, Claim 33)

| Plaintiff's Construction | Defendant's Construction |
|---|---|
| "one or more variables associated with an operating mode first entered into by a gateway unit after registration" | Plain and ordinary meaning, no construction necessary |

Dish argues that "MCM's construction requires a limitation ('after registration') that only might occur." *Id.* at 26 (emphasis removed). MCM respectfully submits that *Claim 33* of the '468 Patent requires a limitation, "initial." MCM's proposed construction clarifies what is meant by

10

initial. A reasonable juror might ask, "initial to what?" or "when does 'initial' start?" MCM's construction clarifies that the answer is "initial to whatever a gateway unit does after registration."

Further, MCM believes that "one or more variables associated with an operating mode" is more readily understandable by a jury than "operating parameters." However, should Dish and/or the Court prefer the claim language "operating parameters," MCM would not dispute the construction of "operating parameters first used by a gateway unit after registration."

## IV. CONCLUSION

Dish continues to support constructions that are not supported by, and are inconsistent with, the specifications and file histories of the patents-in-suit. In contrast, MCM has provided constructions consistent with the specifications and file histories of the Patents-in-Suit. The Court should therefore adopt MCM's proposed constructions.

Dated: April 5, 2019

Respectfully submitted,

*/s/ Jeffrey G. Toler*
Jeffrey G. Toler
Aakash S. Parekh
Benjamin R. Johnson (*pro hac vice*)
TOLER LAW GROUP, PC
8500 Bluffstone Cove
Suite A201
Austin, TX 78759
(512) 327-5515
jtoler@tlgiplaw.com
aparekh@tlgiplaw.com
bjohnson@tlgiplaw.com

***Attorneys for Plaintiff Multimedia Content Management LLC***

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on April 15, 2019, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record in the above-reference matter.

<i>/s/ Jeffrey G. Toler</i>
Jeffrey G. Toler
TOLER LAW GROUP, PC
8500 Bluffstone Cove
Suite A201
Austin, TX 78759
(512) 327-5515