IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF TEXAS

WACO DIVISION

| | | |
|---|---|---|
| MULTIMEDIA CONTENT MANAGEMENT LLC<br>*Plaintiff*<br><br>v.<br><br>DISH NETWORK CORPORATION<br>*Defendant* | § § § § § § § § § § § | CIVIL NO. 6:18-CV-00207-ADA |

### MARKMAN CONSTRUCTION ORDER

The Court enters the following claim constructions following briefing and a hearing that was conducted on April 26, 2019. During that hearing, the Court informed the Parties of the constructions it intended to provide. This Order does not alter any of those constructions.

**Term 1: "to generate controller instructions" ('468 Patent: Claim 1 / '925 Patent: Claim 1) or "generating controller instructions" ('468 Patent: Claim 23 / '925 Patent: Claim 29)**

The dispute between the Parties concerns two issues: (1) whether instructions must be created and not simply transmitted or relayed to qualify as the claimed "controller instructions," and (2) whether the claimed intrinsic evidence supports the understanding that "controller instructions" must decide whether or not to transmit content requests.

The Court finds that the use of "create or bring into being" for "generate controller instructions" is appropriate. This construction accurately reflects the dictionary definition of the word "generate" and comports with the requirement that the functions of "transmitting" or "relaying" cannot be encompassed within generating controller instructions. Thus, the Court finds that it would be incorrect to utilize the terms "transmitting" or "relaying."

1

Further, the context of the claims concerns regulating access to content. The specification uniformly describes the functionality of the "controller instructions" as "determining whether to transmit or not transmit content requests" and not anything else. *See, e.g.*, '468 Patent at 2:23-3:2 ("the second processor ***selectively transmitting*** at least some of the network access requests ***over the network*** in accordance with the controller instructions") (emphasis added); 7:54-65 ("At step 404, the gateway unit ***selectively transmits the network access requests*** over the network ***in accordance with the controller instructions***.") (emphasis added); 9:64-10:6 ("Next, at step 502, ***the network unit selectively inhibits access to a portion of the content servers*** by a second group of users ***in accordance with the controller instructions***.") (emphasis added).

With respect to MCM's proposed construction, it argues that "one of ordinary skill in the art would understand a 'controller instruction' to exclude merely a uniform resource locator ('URL') or an internet protocol ('IP') address." Dkt. Number 51 at 10. The Court rejects Plaintiff's contention that this should be used in construing the claim term. MCM fails to explain how the negative limitation "excluding merely a uniform resource locator (URL) or an internet protocol (IP) address" clarifies "controller instructions" or amounts to more than an improper importation of an ancillary term. *See Intervet Am., Inc. v. Kee-Vet Labs., Inc.*, 887 F.2d 1050, 1053 (Fed. Cir. 1989) ("limitations appearing in the specification will not be read into the claims"). The Court does not find the restriction to be necessary or appropriate.

Because of the foregoing, the construction for this claim term is "to create[ing] or bring[ing] into being computer executable instructions that determine whether to transmit or not transmit a content request from a user to the service provider network"

**Term 2: "a controller node" ('468 Patent: Claims 1 and 23 / '925 Patent: Claims 1 and 29)**

The primary dispute with respect to this claim term is whether a single network device is required in view of the full intrinsic record, which dictates that the "generating" and "transmitting" controller instructions must be performed by the same device, or whether it may be performed by multiple devices in a distributed manner. The Court agrees with Dish that the intrinsic evidence demonstrates that each controller node must be "a single network device" that performs the "generate" and "transmit" functions. The Court makes this finding because (1) "the controller node" must do both the "generating" and "transmitting" functions as claimed, and (2) the "generating" function does not include receiving the instructions from another device, the claimed controller node must be construed as a "single" network device. *See* Dkt. Number 48 at 7–9.

The Court rejects the construction proffered by MCM because it imports limitations such as "network-based router or computer," "within the network," and "remote from the gateway unit" without any lexicography or disclaimer to support limiting the plain meaning of the claimed term. *Toshiba Corp. v. Imation Corp.*, 681 F.3d 1358, 1369 (Fed. Cir. 2012) ("Absent disclaimer or lexicography, the plain meaning of the claim controls."). The Court carefully considered the reasons that MCM articulated at the hearing as to why these were necessary but believes that they are incorrect as a matter of well-established caselaw. The Court also finds that the construction it is adopting is consistent with the statements made by MCM during the IPR proceedings. Accordingly, the construction for this claim term is: "a single network device that controls the operation of the gateway units."

3

**Term 3: "a service provider network" ('468: Claims 1 and 23 / '925: Claims 1 and 29)**

At the heart of this dispute is whether a service provider network "only includes those network elements operated or controlled by the service provider." In favor of its proposed construction, Dish argues that its proposed construction is entirely consistent with an unequivocal disclaimer made by MCM during the prosecution of the IPR. The Court agrees.[1] The Court also agrees with Dish that their proffered construction is more understandable to the jury than MCM's construction.

As previously stated, Dish's proposed construction is consistent with the position taken by MCM in the IPR. MCM overcame the prior art at issue in the Unified Patents IPR by arguing that the service provider network did not include third-party network elements or any network elements of the public Internet:

> Fig. 1 also illustrates that the ***"service provider network" 54 is distinct from Non-SPA Network Elements 55***. Collectively, the "service provider network" and Non-SPA Network Elements comprise the Internet/Metro Area Network. Thus, the "service provider network" is not the entire public Internet and ***only includes those network elements operated or controlled by the service provider***.

Ex. A (POPR) at 6 (emphasis added). Accordingly, the construction for this claim term is: "a network between the controller node and the plurality of gateway units that is not the public Internet and only includes those network elements operated or controlled by the service provider."

**Term 4: "selectively transmit[ting, by the plurality of gateway units,] the content requests to the service provider network in accordance with the controller instructions" ('468: Claims 1 and 23 / '925: Claims 1 and 29)**

The dispute that the Court must resolve is whether the content requests from the gateway units or network elements must travel over the service provider network or not. MCM took the

---

[1] The Court notes that the intrinsic record that this Court must consider includes the positions and statements made by the Parties to the IPR.

4

position in the IPR that all content requests must travel over (take place within) the "service provider network." The Court finds that the construction proffered by MCM attempts to add unsupported elements and structure to the "selectively transmitting" step by construing the term as: "(1) 'a gateway unit'" wherein "(2) the gateway unit is 'under control of the remotely located controller node'" and "(3) [t]he gateway unit 'executes previously received controller instructions to determine whether to transmit a content request from a user or to take other actions' such as denying the content request." Dkt. Number 51 at 19.

The specification explains that the "selectively transmitting" step occurs within the service provider network. Specifically, the specification unequivocally states "all ICP-CG communications take place within the ISP side of the network." '468 Patent at 4:33-34 (emphases added). As such, the Court finds that because "all" communications take place within the service provider network, the specification requires that "content requests" also travel within the service provider network. *See The Medicines Co. v. Mylan, Inc.*, 853 F.3d 1296, 1305 (Fed. Cir. 2017) (explaining that claim construction requires a process described in the specification when the specification states that the "process includes all of the embodiments as described").

In short, the Court rejects MCM's proposed construction because it finds no basis for construing the functional "selectively transmitting" term to include a structural "gateway unit" limitation or why "selectively transmitting" requires "the remotely located controller node" to control the gateway units. Accordingly, the construction of this claim is: "transmitting all selected content requests through the service provider network in response to the controller instructions' decision to transmit the content requests.

**Term 5: "gateway units" ('468 Patent: Claims 1 and 23)**

Both Parties agree that "gateway units" are located "remote from the controller node." MCM attempts to include the narrowing limitation "located within a subscriber premise." Dkt. Number 51 at 20. The Court finds that MCM's inclusion of "located within a subscriber premise" is unsupported; therefore, the Court rejects the MCM's proffered construction. The Court also finds no basis for adding the element of being controlled by the controller node to the claim construction. Both DISH's and MCM's construction of "a controller node" includes "control[ling] the operation of the gateway units," and thus, that limitation is redundant and unnecessary. As such, the Court adopts the Dish's proffered construction. Accordingly, the construction of this term is: "computer devices that are remote from the controller node and interface with the service provider network and a subscriber terminal"

**Term 6: "network elements" ('925: Claims 1 and 29)**

In its proposal for the construction of this claim term, MCM adds much that the Court finds unnecessary. MCM relies on Figure 1 to suggest that the Court should import the "located remote from the controller node" feature into the construction of network elements. MCM argues that that Figure 1 of the '925 Patent "illustrates 'SPA Network Elements' 54 and 'Non-SPA Network Elements' 55 as located within 'Internet/Metro Area Network 52' and remote from 'Internet Control Point' 50 (i.e., a controller node)." *Id.* at 28. The Court disagrees. Figure 1 of the '925 Patent does show that the network elements are coupled to "Internet Control Point" 50. However, there is nothing in Figure 1 or the accompanying text in the specification that requires the network elements to be "located remote from the controller node."

The Court finds that Dish's proffered construction is correct. The specification supports a broader construction of the "network elements" term than the construction proposed by MCM

Dkt. Number 48 at 22–23. The specification explains that "[n]etwork elements 54, 55 may include, for example, network switches and routers. SPA-controlled network elements 54 aid in regulating access and distributing content through network 52." '925 Patent at 5:11-14. Similarly, the specification states "SPA-controlled network elements 54 may include one or more network interfaces 300, one or more processors 302, a memory device 304 including a database, and one or more switch modules 306 for providing routing and switching services." *Id.* at 7:27-31. Accordingly, the construction of the claim term is: "computer devices within the service provider network"

**Construction of the Dependent Claim terms**

The Court finds that all of the dependent claim terms raised by the Parties should have their plain and ordinary meaning.

**SIGNED** this 17th day of June 2019.

*/s/ Alan D Albright*

ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE