**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | | |
|---|---|---|
| **MULTIMEDIA CONTENT MANAGEMENT LLC,** § § | | |
| *Plaintiff* § | | 6:18-CV-00207-ADA |
| § | | |
| -v- § | | |
| § | | |
| **DISH NETWORK L.L.C.,** § | | |
| *Defendant* § | | |

**ORDER REGARDING PROSECUTION BAR AND
ACQUISITION BAR PROVISIONS OF PROTECTIVE ORDER**

Before the Court is the parties' dispute regarding two provisions in the proposed protective order, namely, the prosecution bar and acquisition bar. After consideration of the applicable law, facts, and parties' arguments, the Court **ORDERS** that the parties submit a joint proposed protective order based on the guidance provided herein by October 2, 2019.

**I.     Background**

On September 17, 2019, the parties sent a joint letter to request a telephonic hearing regarding the scope and duration of the proposed prosecution bar. The Court scheduled a telephonic hearing on this issue for September 18, 2019. Less than two hours before the telephonic hearing, Defendant DISH Network ("DISH") notified the Court of additional facts that it contended further warranted entry of its version of the prosecution bar. More specifically, DISH notified the Court that "MCM has submitted an appearance for [Dmitriy] Andreyev as new counsel yesterday. Mr. Andreyev is a competitive decision-maker and owns a patent monetization firm (Flagship IP)." During the hearing, DISH's counsel requested additional time to investigate Mr.

1

Andreyev's background in order to determine what changes, if any, needed to be made to the proposed prosecution bar.

On September 19, 2019, the Court ordered the parties to submit a joint letter by noon the following day to advise the Court of any other provisions, including a patent acquisition bar, that may need to be added to the protective order.

In the parties' joint letter, DISH proposed the following revised prosecution bar:

> 13. **Prosecution Bar**: Any person on behalf of the Plaintiff permitted to receive the other Party's Designated Material that is designated ATTORNEYS' EYES ONLY and/or RESTRICTED CONFIDENTIAL SOURCE CODE (collectively "HIGHLY SENSITIVE MATERIAL"), who obtains, receives, has actual access to, or otherwise learns, in whole or in part, the other Party's HIGHLY SENSITIVE MATERIAL under this Order shall not prepare, prosecute, supervise, or assist in the preparation or prosecution of any patent application pertaining to the field of (i) the invention of the patents-in-suit, (ii) any patents or patent applications related to the technology or subject matter of the patents-in-suit, or (iii) the subject matter of information disclosed in RESTRICTED CONFIDENTIAL SOURCE CODE material on behalf of the receiving Party or its acquirer, successor, predecessor, or other affiliate during the pendency of this Action and for eighteen (18) months after its conclusion, including any appeals. Nothing in this Section shall prevent any attorney from sending non-confidential prior art to an attorney involved in patent prosecution for purposes of ensuring that such prior art is submitted to the U.S. Patent and Trademark Office (or any similar agency of a foreign government) to assist a patent applicant in complying with its duty of candor. Nothing in this provision shall prohibit any attorney of record in this litigation from discussing with his/her client any aspect of this case that is reasonably necessary for the prosecution or defense of any claim or counterclaim in this litigation. Nothing in this provision shall apply to reexamination proceedings, inter partes review, covered business method review, or post grant review, except that such prosecution bar shall extend to assistance or participation in discussions relating to drafting or amending claims in reexamination, inter partes review, covered business method review, or post grant review proceedings. To ensure compliance with the purpose of this provision, each Party shall create an "Ethical Wall" between those persons with access to HIGHLY SENSITIVE MATERIAL and any individuals who, on behalf of the Party or its acquirer, successor, predecessor, or other affiliate, prepare, prosecute, supervise or assist in the preparation or prosecution of any patent application pertaining to the field of invention of the patent-in-suit.

Plaintiff Multimedia Content Management ("MCM") made several objections to this provision including: (1) the provision only applies to MCM when the prosecution bar—at least according to MCM—should apply to both parties; (2) the defined scope of the prosecution is ambiguous and overbroad; (3) the length; (4) the application of the prosecution bar to post-grant proceedings such as *inter partes* review ("IPR"); and (5) that an ethical wall between is not needed.

DISH also proposed the following patent acquisition bar:

> 14. **Acquisition Bar**: Any person on behalf of the Plaintiff permitted to receive the other Party's Designated Material that is designated HIGHLY SENSITIVE MATERIAL, who obtains, receives, has actual access to, or otherwise learns, in whole or in part, the other Party's HIGHLY SENSITIVE MATERIAL under this Order shall not i) advise or participate in the acquisition of any patent that is or will be asserted against Defendant, ii) advise a patent holder, patent owner, company, or investor, including IP Valuation Partners or any of its subsidiaries or affiliates, on the selection or valuation of any patent or claim asserted or to be asserted against Defendant, iii) advise or participate in any patent litigation strategy in a future patent litigation against Defendant.

MCM made several objections to this provision including: (1) because an acquisition bar would cause Mr. Andreyev to withdraw, imposing an acquisition bar would deprive MCM of his services, thus delaying the source code review and increasing MCM's expenses by having to get his replacement up to speed, (2) an acquisition bar is not needed because Mr. Andreyev said he will withdraw if one were imposed, (3) this acquisition bar would effectively bar any counsel from litigating against DISH in the future, (4) the language of the acquisition bar is unclear whether attorneys representing MCM would be precluded in the future, and (5) there is no time limit on the acquisition bar.

The Court held a hearing on these issues on September 24, 2019.

## II.     Legal Standards

### A.     Protective Orders

Under Rule 26 of the Federal Rules of Civil Procedure, "for good cause shown . . . the court . . . may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." FED. R. CIV. P. 26(c). Rule 26 permits a court to enter a protective order to restrict an individual attorney's access to a trade secret or other confidential information. *See* FED. R. CIV. P. 26(c)(1).

In determining whether a protective order should bar one party's attorney access to information, the Court must focus on the risk of "inadvertent or accidental disclosure," and weigh that risk against the potential that the protective order may impair the other parties' ability to prosecute or defend its claims. *U.S. Steel Corp. v. United States*, 730 F.2d 1465, 1468 (Fed. Cir. 1984). To evaluate that balance, courts look specifically at "the factual circumstances surrounding each individual counsel's activities, association, and relationship with a party." *Id*. Other factors to be considered in the balancing include: (1) whether the person receiving the confidential information is involved in competitive decision making or scientific research relating to the subject matter of the patent, (2) the level of risk of inadvertent disclosure of proprietary information, (3) the hardship imposed by the restriction, (4) the timing of the remedy, and (5) the scope of the remedy. *Infosint S.A. v. H. Lundbeck A.S.*, No. 06-cv-2869-LAKRLE, 2007 WL 1467784, at *2 (S.D.N.Y. May 16, 2007). The ultimate goal of the balancing is to determine whether counsel's access to the confidential information creates "an unacceptable opportunity for inadvertent disclosure." *U.S. Steel Corp.*, 730 F.2d at 1468.

### B. Prosecution Bars

Prosecution bars are unique to patent law, so Federal Circuit law, rather than Fifth Circuit law, applies. *In re Deutsche Bank Trust Co. Am.*, 605 F.3d 1373, 1378 (Fed. Cir. 2010). "Deciding whether, and to what extent, a prosecution bar should be granted requires a balancing of interests between the risks of inadvertent disclosure and the right of parties to select their legal counsel." *Affinity Labs of Texas, LLC v. Samsung Elecs. Co., Ltd.*, No. 1-12-CV-557, 2013 WL 12138892, at *1 (E.D. Tex. Nov. 18, 2013).

The party seeking a prosecution bar must first show "that the information designated to trigger the bar, the scope of activities prohibited by the bar, the duration of the bar, and the subject matter covered by the bar reasonably reflect the risk presented by the disclosure of proprietary competitive information." *In re Deutsche Bank*, 605 F.3d at 1381. If a party seeking the prosecution bar meets its burden, the burden then shifts to the other side, to establish on a counsel-by-counsel basis that:

> (1) that counsel's representation of the client in matters before the PTO does not and is not likely to implicate competitive decisionmaking related to the subject matter of the litigation so as to give rise to a risk of inadvertent use of confidential information learned in litigation, and (2) that the potential injury to the moving party from restrictions imposed on its choice of litigation and prosecution counsel outweighs the potential injury to the opposing party caused by such inadvertent use.

*Id.* at 1381.

### C. Acquisition Bars

Like prosecution bars, acquisition bars are unique to patent law, so Federal Circuit law applies. *See In re Deutsche Bank*, 605 F.3d at 1378; *see also Intellectual Ventures I, LLC v. Lenovo Group Ltd.*, No. 16-cv-10860-PBS, 2019 WL 343242, at *2 (D. Mass. Jan. 25. 2019).

"A patent acquisition bar may be appropriate to prevent trial counsel from inadvertently disclosing confidential information when advising on subsequent patent acquisitions." *In re*

5

*Trustees of Boston University Patent Cases*, Nos. 12-11935-PBS, 2013 WL 12324364, at *3 (D. Mass. Nov. 15, 2013) (citing cases).  The reasons justifying a patent acquisition bar for counsel also apply to experts and consultants.  *Id.*  Courts analyze the necessity of entering an acquisition bar using the prosecution bar test.  *See, e.g.*, *E-Contact Techs. LLC, v. Apple, Inc.*, NO. 1:11–CV–426 (LED/KFG), 2012 WL 11924448, at *1 (E.D. Tex. June 19, 2012).

The scope of acquisition bars varies depending on the specific parties.  For example, in *Unwired Planet LLC v. Apple Inc.*, the court agreed with Apple regarding the necessity of inserting "directly or indirectly" in order "to [e]nsure that the bar is not circumvented through an intermediary."  No. 3:12–CV–00505–RCJ, 2013 WL 1501489, at *7 (D. Nev. Apr. 11, 2013).  But courts generally permit counsel who have received confidential information to advise clients on validity and settlement negotiations.  *Intellectual Ventures I*, 2019 WL 343242, at *7.

### III. Legal Analysis

#### A. Prosecution Bar

After listening to the parties arguments during the September 24, 2019 hearing regarding "(ii) any patents or patent applications related to the technology or subject matter of the patents-in-suit," the Court ordered that the language be changed to "Any patents or patents applications related to the technology or subject matter of the patents-in-suit for which discovery was sought or highly confidential information was disclosed."  Hrg. Tr. at 7:4–7.

The Court also ordered that the length of the prosecution bar expire one year after the conclusion of this action, including any appeals.  *Id.* at 17:3–8.

The parties dispute whether counsel who has received highly sensitive material should be "walled off" from participating in a post-grant proceeding, especially when claims are amended. MCM contends that potential harm to it exceeds the risk to DISH if MCM were forced to use

different trial counsel and IPR counsel. *Id.* at 13:4-24.  In particular, MCM contends that if two different counsel were used and there was an ethical wall between them, then the possibility that the two counsel may make inconsistent or contradictory arguments—which may be used against MCM in one proceeding or other—is very likely, and thus unfair. *Id.*  DISH contends that it would be prejudiced if the same attorneys could participate in the district court litigation and PTO proceedings because any amendments would be based on non-public information. *Id.* at 9:11–11:22.

      The Court generally agrees with MCM that using two different sets of counsel for district court litigation and PTO proceedings unfairly limits MCM's right to choose its own counsel and dramatically—and unfairly—increases the possibility of inconsistent arguments.  The Court, however, also agrees with DISH regarding the amendment of claims after receiving highly sensitive material.  Therefore, the Court orders that the prosecution bar should allow an attorney who has received highly sensitive material to participate in a PTO proceeding, *e.g.*, an IPR.  But if MCM opts to amend any claims, an attorney who has received highly sensitive material cannot participate—directly or indirectly—in the amendment of any claim(s), and to minimize the risk of inadvertent disclosure, MCM must erect an ethical wall between the attorney(s) who have received highly sensitive material and the attorney(s) who are involved in amending the claims.  To be clear, an attorney who has received highly sensitive material may not participate—directly or indirectly—in amending a claim, but may still participate in the non-amendment aspects of the PTO proceeding, *e.g.*, defending that claim against invalidity.  The Court understands that because it is rare for claims to be amended during an IPR, this prohibition against amending claims will most likely not impinge MCM's right to choose its own counsel.

**B.     Acquisition Bar**

Prior to the hearing, the Court informed the parties that it believed that an acquisition bar was necessary. While the Court generally disfavors acquisition bars, this situation is unique in a few ways. First, the Court agrees with DISH that Mr. Andreyev is a competitive decisionmaker. *In re Deutsche Bank*, 605 F.3d at 1380. Mr. Andreyev is the founder of Flagship IP LLC, which describes itself as "Flagship IP helps clients find valuable patents, identify optimal monetization strategies and lead the monetization project to a successful completion." http://www.flagshipip.com/ (last visited Sept. 24, 2019). Given that he is the founder of Flagship IP, the Court finds that Mr. Andreyev is a competitive decisionmaker, which gives "rise to a risk of inadvertent use of confidential information learned in litigation." *Id.* at 1381. And given that one mission of Flagship IP is to "lead the monetization project to a successful completion," the risk of inadvertent disclosure may be significantly heightened. *Id.* at 1380.

Second, it concerns the Court that MCM has not explained why it selected Mr. Andreyev to review DISH's source code. MCM first disclosed Mr. Andreyev so that he could review MCM's source code. Although his *curriculum vitae* indicates that he has a significant amount of programming experience prior to beginning his legal career in 2004, MCM does not offer him as an expert, but rather as an attorney, in contrast to at least one of Mr. Andreyev's prior cases. Hrg. Tr. at 25:11–16. MCM has not shown why it needs a competitive decisionmaker, who is not a technical expert, to undertake a difficult technical task (source code review) when it could have hired a technical expert.[1] In the absence of such an explanation, the Court concludes the risk of inadvertent disclosure may be higher.

---

[1] And if MCM has hired or will hire an expert, its choice of Mr. Andreyev to also review source code is all the more puzzling.

Third, MCM has not explained why Mr. Andreyev has particular legal skills such that he is well-suited to review DISH's source code and other highly sensitive material. MCM is currently represented by two law firms, Toler Law Group and Patterson Sheridan. The former has a dozen attorneys while the latter has several dozen attorneys and patent agents. MCM has not explained why a competitive decisionmaker like Mr. Andreyev, who appears to primarily have a transactional practice and has appeared in a very small number of cases, has the legal skills that the other attorneys at Toler Law Group and Patterson Sheridan lack.

The Court wishes to make clear that it does not believe that Mr. Andreyev has acted or will act improperly, or that he has not maintained the highest ethical standards as an officer of the court. Rather, the Court's discussion of Mr. Andreyev and Flagship IP simply describe the Court's analysis in balancing the risk of inadvertent disclosure without an acquisition bar against the right of MCM to select its own counsel.

Therefore, the only question remaining before the Court is the scope of the acquisition bar. At the hearing, MCM proposed the following acquisition bar:

> To the extent Dmitriy Andreyev is permitted to receive DISH's Designated Material that is designated HIGHLY SENSITIVE MATERIAL, and Mr. Andreyev obtains, receives, has actual access to, or otherwise learns, in whole or in part, DISH's HIGHLY SENSITIVE MATERIAL, Mr. Andreyev shall not substantively supervise/assist in the acquisition of patents related to restrictions on access to video content in video distribution systems for the purpose of asserting infringement claims against DISH on behalf of MCM for 18 months following the last time Mr. Andreyev reviews such HIGHLY SENSITIVE MATERIAL, except that Mr. Andreyev may provide advice regarding the validity of any patent or patent application.

During the hearing, DISH proposed a revised acquisition bar as stated below:

> 14. **Acquisition Bar**: Any person on behalf of the Plaintiff permitted to receive the other Party's Designated Material that is designated HIGHLY SENSITIVE MATERIAL, who obtains, receives, has actual access to, or otherwise learns, in

9

>whole or in part, the other Party's HIGHLY SENSITIVE MATERIAL under this Order shall not i) advise or participate in the acquisition of any patent that is or will be asserted against Defendant and ii) advise a patent holder, patent owner, company, or investor, including IP Valuation Partners or any of its subsidiaries or affiliates, on the selection or valuation of any patent or claim asserted or to be asserted against Defendant for twelve (12) months following the conclusion of this litigation, including any appeals.

In particular, DISH's revised proposed acquisition bar removed subsection (iii) and added a time limit to the acquisition bar.

There are three major differences between the parties' latest proposed acquisition bars. First, MCM's proposed acquisition bar is specifically directed at Mr. Andreyev while DISH's proposed acquisition bar applies to anyone who received highly sensitive material. The Court prefers DISH's approach because, as stated above, the Court does not think that Mr. Andreyev has anything but the highest ethics and, as such, does not wish to impugn his reputation by singling him out, by name, in an acquisition bar. Additionally, the Court believes that when an acquisition bar needs to be entered, it should be broad enough to include all people who have received highly sensitive material, in order to provide the necessary protections.

The second major difference between the parties' proposed acquisition bars is the duration of the acquisition bar. MCM proposes allowing the acquisition bar to expire at the end of "18 months following the last time Mr. Andreyev reviews such HIGHLY SENSITIVE MATERIAL." Conversely, DISH proposes "twelve (12) months following the conclusion of this litigation, including any appeals." The Court prefers DISH's approach because it provides a clear start and stop time for both parties whereas under MCM's proposal, the start time may only be known to Mr. Andreyev and the stop time may keep changing if Mr. Andreyev purposefully or accidentally reviews highly sensitive material.

The third major difference between the parties' proposed acquisition bars is its scope. MCM proposes limiting the scope to "restrictions on access to video content in video distribution system" whereas DISH proposes limiting the scope to, *inter alia*, having access to or receiving highly sensitive material.  The Court prefers DISH's approach based on DISH's representation at the hearing that MCM has asked for and DISH has provided documents that are "much broader" than the patents-in-suit.  *Id.* at 5:4–11.

Consistent with the way that other courts have addressed this issue, this Court orders an exception to the acquisition bar to permit counsel who has received highly sensitive material to advise clients on both the issue of validity and with settlement negotiations.  *See, e.g.*, *Intellectual Ventures I*, 2019 WL 343242, at *7.  Allowing this exception does not appear to the Court to increase the risk of inadvertent disclosure and is similar to the Court's exception for PGRs in the above prosecution bar.

Finally, to ensure a robust acquisition bar, the Court orders that the acquisition bar include the "directly or indirectly" language in order to explicitly forbid indirect advice through an intermediary, *i.e.*, "…under this Order shall not directly or indirectly i) advise or participate in the acquisition of any patent that is or will be asserted against Defendant and…"

## IV. Conclusion

The Court **ORDERS** the entry of a prosecution bar and an acquisition bar consistent with the Court's reasoning described above.  The Court further **ORDERS** that the parties submit a joint proposed protective order by October 2, 2019.

**SIGNED** this 25th day of September, 2019.

_____
ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE